**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

ERIC JACKSON,

                Plaintiff,

       v.                               No. 8:16-CV-1137
                                                 (LEK/CFH)

MARK WILLIAMS CHIEF OF POLICE,
UTICA POLICE DEPARTMENT,
DONALD CINQUIE, LIEUTENANT,
UTICA POLICE DEPARTMENT,
PAUL PALADINO, INVESTIGATOR,
UTICA POLICE DEPARTMENT,
JOSEPH AMBEROSA, INVESTIGATOR,
UTICA POLICE DEPARTMENT,

                Defendants.

_____

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**


**APPEARANCES:**
Eric J. Jackson
15-B-3139
Bare Hill Correctional Facility
Caller Box 20
Malone, New York 12953
Plaintiff pro se

### REPORT-RECOMMENDATION AND ORDER[1]

      Presently before the Court is an application to proceed in forma pauperis ("IFP")

and a complaint filed by pro se plaintiff Eric Jackson, an inmate currently in the custody

of the New York State Department of Corrections and Community Supervision

_____

     [1] This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

("DOCCS").  Dkt. Nos. 1 ("Compl."); 2-3.  Plaintiff brings this action pursuant to 42

U.S.C. § 1983, alleging that defendants City of Utica Police Department and its Chief of

Police, Mark Williams ("Chief Williams" or "Williams"); and officers Donald Cinque

("Cinque"), Joseph Amerosa ("Amerosa"), and Paul Paladino ("Paladino") violated his

constitutional rights.  Compl. at 9-12.  For the following reasons, it is recommended that

plaintiff's complaint be dismissed in part.


## I. IFP

After reviewing the plaintiff's IFP application, the undersigned finds that plaintiff

may properly proceed IFP.[2]  Dkt. Nos. 2-3.


## II. Initial Review

### A. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a

plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court

determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is the court's

---

[2] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in federal court without prepayment of the filing fee that would ordinarily be charged."  Cash v. Bernstein, No. 09-CV-1922 (BSJ/HPB), 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not repay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).  Plaintiff is also required to pay any copying and/or witness fees he may incur.

2

responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.[3]

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.  Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  The pleadings submitted by pro se litigants thus merit "special solicitude." Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994).


**B. Facts**

On May 21, 2015, plaintiff was away from his place of residence in Bronx, New York, visiting his aunt's house in Utica, New York.  Compl. at 3.  Plaintiff laid down on his aunt's couch at approximately 1:30 AM, after several hours of socializing with three

---

[3] Any unpublished decisions cited within this Report-Recommendation and Order are attached hereto.

acquaintances who were also staying at the aunt's house.  Id.  At approximately 6:00

AM that morning, the Utica S.W.A.T. unit and other law enforcement personnel

(collectively "Utica police") entered the home.  Id. at 4.  Plaintiff was the "subject of [a]

search warrant" based on his suspected sale of drugs during prior visits to his aunt's

house in Utica, New York.[4]  Id.

        Upon hearing the Utica police enter his aunt's home, plaintiff "quickly move [sic]

away from the noise in the front of the house" in search of his acquaintances.  Compl.

at 4.  While plaintiff was moving toward the back of the home, the Utica police entered

the premises and "detonated something that sounded like a grenade at the front door."

Id. at 5.  Plaintiff then decided to go upstairs to find his aunt and acquaintances.  Id.

Plaintiff encountered King, a dog, who was "crying and clearly traumatize [sic] from the

explosion at the front door . . . ."  Id.  Plaintiff stopped to comfort the dog, gave it a hug,

and began to ascend the stairs.  Id.  However, officers Paladino and Amerosa stopped

plaintiff at the base of the stairs.  Id.  Defendant Paladino ordered plaintiff to get down

on the floor with his hands behind his back, and plaintiff immediately complied.  Id. at 6.

Paladino then pressed his feet on plaintiff's neck, pushing plaintiff's head down.  Id.

This action "agitated" the dog, which caused it to "cry."  Id.  In response to the dog's

"crying," defendant Amerosa asked defendant Paladino, "should I shoot this dog?"[5]  Id.

Plaintiff cried out, saying "please don't shoot the dog, let him go outside."  Id.

---

[4] Although plaintiff describes the warrant as a "search warrant," giving the complaint its due solicitude, the undersigned interprets this to mean an arrest warrant because, reading the complaint in its entirety, the plaintiff indicates that *he* was the "subject" of the warrant.  See infra Part 3.c.

[5] The complaint does not indicate whether defendant Paladino answered defendant Amerosa's question.  See Compl. at 6.

Defendant Paladino again pressed his feet onto plaintiff's neck, which further "agitated" the dog, causing it to "cry[]."  Id. at 7.  Defendant Amerosa then "opened fire on [the] dog, firing at least six (6) shots, killing [the] dog."  Id. at 7.

While defendant Amerosa was shooting the dog, plaintiff was hit in his right foot by a bullet while he was "still on the ground."  Compl. at 7.  When plaintiff complained that he had been shot, defendants Amerosa and Paladino instructed him to get up, and he complied.  Id.  Defendants Amerosa and Paladino then guided plaintiff into the kitchen, where he was interrogated by both officers.  Id.  Plaintiff was then taken to St. Elizabeth's Hospital in Utica, where he was informed by a physician that the bullet lodged in his foot needed to remain there "temporarily."  Id. at 8.  Hospital staff cleaned and dressed plaintiff's wound, gave him crutches, and released him into police custody.  Id.  Plaintiff was unable to attend a follow up appointment at the hospital due to his incarceration.  Id.  He is currently receiving therapy and experiences periodic discomfort.  Id.

### C. Analysis

### 1. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen

against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate Eleventh Amendment immunity of the states.  See Quern v. Jordan, 440 U.S. 332, 339-341 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, insofar as plaintiff seeks an award of money damages pursuant to § 1983 against the defendant officers in their official capacities, those claims are barred by the Eleventh Amendment.  Graham, 473 U.S. at 166.  Accordingly, it is recommended that all claims against the defendants in their official capacities be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

**2. City of Utica Police Department**

6

"While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not." Peterson v. City of Syracuse Police Dpt., No. 1:09-CV-00106 (LEK/RFT), 2010 WL 1235392, at *3 (N.D.N.Y. Mar. 31, 2010) (quoting La Grande v. Town of Bethlehem Police Dep't., No. 1:08-CV-0738, 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) (citation omitted)). "[A] police department is an administrative arm of the city, which is a municipality, '[and] . . . cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.'" Clayton v. City of Kingston, 44 F. Supp.2d 177 (N.D.N.Y. 1999) (quoting Baker v. Willett, 42 F. Supp.2d 192, 197 (N.D.N.Y. 1999) (citation omitted)).

Accordingly, because the City of Utica Police Department cannot be sued pursuant to 42 U.S.C. § 1983, it is recommended that plaintiff's complaint be dismissed with prejudice as against the City of Utica Police Department. However, affording the pro se plaintiff due solicitude, the undersigned will review the viability of these claims as if properly brought against the City of Utica. See Peterson, 2010 WL 1235392, at *3 (dismissing a pro se plaintiff's claim against a municipal police department, but assessing the claim by assuming, arguendo, that it could be construed as a claim against the municipality itself).

### 3. Monell Claims and Claims against Chief Williams

### a. Plaintiff's First Cause of Action

Plaintiff alleges that the Utica Police Department and its Chief, Mark Williams, violated the "New York and United States Constitution" by "exercising a discriminatory

practice or policy of targeting minority homes in Utica, New York for drug raids base[d] on minor drug offenses."[6] Compl. at 9. Plaintiff does not identify any specific constitutional provision on which this claim is based, but affording him due solicitude as a pro se plaintiff, Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)), this claim may be most properly brought under the Fourteenth Amendment's Equal Protection Clause, as it appears that plaintiff is alleging disparate treatment based on minority status. See Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in the pleadings."). Accordingly, the undersigned will perform the section 1915(e) review of plaintiff's first cause of action as if it were properly brought pursuant to the Fourteenth Amendment's Equal Protection Clause.

It is well established that "[a] municipality may be liable under § 1983 only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Varela v. City of Troy, No. 1:10-CV-1390 (GLS/RFT), 2014 WL 2176148, at *6 (N.D.N.Y. May 22, 2014) (quoting Monell v. Dep't of Soc. Servs. of City of New York,

---

[6] "Where claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims." Wright v. City of Syracuse, No. 5:10-CV-0661 (GTS/TWD), 2014 WL 1293527, at *18 (N.D.N.Y. Mar. 31, 2014), aff'd, 611 F. App'x. 8 (2d Cir. 2015) (collecting cases). As all of plaintiff's state constitutional claims are also asserted as § 1983 claims, it is recommended that all such claims be dismissed. Accord Canzoneri v. Village of Rockland Ctr., 986 F. Supp.2d 194, 206 (E.D.N.Y. 2013).

436 U.S. 658, 694 (1978)).

> To establish a municipal policy or custom, a plaintiff must allege: (1) the existence of a formal policy endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

Varela, 2014 WL 2176148, at *6-7 (citing Prowisor v. Bon-Ton, Inc., 426 F. Supp.2d 165, 174 (S.D.N.Y. 2006) aff'd 232 F. App'x 26 (2d Cir. 2007) (citation omitted)).

Moreover, for purposes of Monell claims, a police chief is considered to hold a position of final policymaking authority. See Birmingham v. Ogden, 70 F. Supp.2d 353, 373 (S.D.N.Y. 1999) (providing that it is an "indisputable fact that the . . . Police Chief qualif[ies] as [a] 'policy maker.'"). Further, "[e]ven where allegations in the complaint of the existence of an official policy are not buttressed by supporting facts, dismissal is not warranted as long as the defendant has 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Hines v. City of Albany, 542 F. Supp.2d 218, 230 (N.D.N.Y. 2008) (citing Nesbitt v. County of Nassau, No. 05-CV-5513, 2006 WL 3511377, at *4 (E.D.N.Y. Dec. 6, 2006) (citation omitted)).

"Fair notice" is defined as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation marks omitted). Where a plaintiff alleged that a county

9

had "maintained an official policy of negligent supervision and training of law enforcement officials which [rose] to the level of deliberate indifference to the constitutional rights of those within its domain[,]" and that the defendant police officer took actions pursuant to that policy with "actual malice and with the actual intent to inflict serious injury on the plaintiff," and the plaintiff claimed that he had sustained injury as a result, the court found that plaintiff had sufficiently alleged a cause of action against the municipal defendant under § 1983. Nesbitt, 2006 WL 3511377, at *4. The court concluded that the plaintiff had met the notice pleading requirement, thereby providing fair notice to the County to "affirm or deny the allegations" of the existence of such a policy. Id.

At this early stage, where the plaintiff is afforded significant solicitude, plaintiff states plausible equal protection claims against Chief Williams in his individual capacity to the extent plaintiff alleges that Chief Williams established or ratified "a discriminatory practice or policy of targeting minority homes" under Monell. Hines, 542 F. Supp.2d at 230-31. Accordingly, the undersigned recommends that plaintiff's equal protection claims against Chief Williams in his individual capacity proceed. However, to the extent that plaintiff intends to bring this cause of action against the Utica Police Department, it is recommended that this cause of action be dismissed with prejudice, based on the analysis presented supra Part C. 2. It is further recommended that, should plaintiff wish to proceed with this claim against the proper municipal defendant, the City of Utica, plaintiff be afforded the opportunity to amend his complaint to allege this cause of action.

**b. Second and Fifth Causes of Action[7]**

Plaintiff alleges that the Utica Police Department and Chief Mark Williams violated his due process and equal protection rights by "failing to have a policy or practice in the standard operating procedure that allows for the ethical treatment of animals" and "for failure to properly train, guide, direct and/or counsel staff to exercise a reasonable ethical standard in confronting animals while doing their duties."  Compl. at 9, 10.  Affording the pro se pleadings due solicitude, it appears that plaintiff is alleging that the Utica Police Department and Chief Williams failed to instate a practice or policy and/or to provide adequate training to officers regarding treatment of pets when conducting search warrants, which led to defendant Amerosa's alleged Fourth Amendment unlawful seizure – the killing of the pet dog.  Id. at 9-10.

At this early stage, these claims meet the pleading standard under Monell. Hines, 542 Supp.2d at 230 (internal citations and quotations omitted) ("Regarding Monell claims . . . [t]he pleading requirement for a § 1983 claim against a municipality will be met if a plaintiff alleges that "a formal policy which is officially endorsed by the municipality caused the plaintiff's injuries."); see also Walker v. City of N.Y., 974 F.2d 293, 298 (2d Cir. 1992) (explaining that the basis for Monell liability under § 1983 may be a municipal defendant's failure to establish a policy when the absence of such a policy results in a constitutional violation).  Therefore, to the extent that plaintiff asserts these claims against Chief Williams – in his individual capacity – for establishing or

---

[7] Plaintiff's second and fifth causes of action are related and will therefore be analyzed together. See Compl. at 9-10.

11

ratifying these alleged policies, or lack thereof, it is recommended that the claims proceed. However, based on the analysis in supra Part C.2, the Utica Police Department is not a proper defendant. Accordingly, it is recommended that plaintiff's cause of action be dismissed with prejudice with respect to the Utica Police Department. It is further recommended that plaintiff be afforded the opportunity to amend his complaint to name the proper defendant should he wish to proceed on this cause of action against the City of Utica.

### c. Third Cause of Action

Plaintiff alleges that the Utica Police Department and Chief Williams violated his Fourth Amendment rights by "maintaining a policy or practice of allowing the unwelcome invasion of a private home to apprehend the subject of a warrant whom [sic] is a mere visitor to the home, and not a permanent residen[t]." Compl. at 9-10. Plaintiff indicates that he was the "subject of the search warrant, because there was an allegation that on a few occasions [plaintiff] had sold drugs in the neighborhood while visiting [his] aunt in Utica, New York." Compl. at 4. Reading the plaintiff's statements together, the undersigned interprets his allegations to mean that he was the subject of an arrest warrant, and that such warrant was improperly executed as it was not performed at his own home.

The Second Circuit has explained that "a subject of a valid arrest warrant cannot complain that his Fourth Amendment right to be free from unreasonable search and seizure was violated by apprehension in a third party's home, entry to which was not

authorized by a search warrant." <u>United States v. Bohannon</u>, 824 F.3d 242, 251 (2d Cir. 2016). Thus, even assuming, arguendo, that the Utica Police Department did not have a search warrant, plaintiff cannot not plausibly allege that his Fourth Amendment rights were violated merely because he was arrested pursuant to a search in a third party's residence. <u>Id.</u> Accordingly, it is recommended that plaintiff's third cause of action against the Chief Williams and the Utica Police Department be dismissed with prejudice.

### d. Fourth Cause of Action

Plaintiff's fourth cause of action appears to suggest that his equal protection and due process rights were violated because the Utica Police Department, through its Chief, failed to institute a policy of "hir[ing], retain[ing], assembl[ing] and/or maintain[ing] a diverse S.W.A.T. unit," and that the lack of such policy causes the members of the S.W.A.T. unit to treat members of minority communities more harshly than members of non-minority communities when performing their duties. <u>See</u> Compl. at 10.

"Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and the laws of the United States.'" <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 283 (2002) (quoting 42 U.S.C. § 1983)). No individual, including plaintiff, possesses a constitutional right to choose the race of his or her arresting officer. Plaintiff does, of course, have the constitutional rights to be free from unequal treatment from those similarly situated and from suffering the effects of a policy which is premised on discriminatory intent. <u>See</u> <u>Iqbal</u>, 556 U.S. at 666-67; <u>Brown v.</u>

13

City of Oneonta, New York, 221 F.3d 329, 336-37 (2d Cir. 2000). However, plaintiff fails to make such allegations. Rather, plaintiff asserts a broad claim that the Utica Police Department and Chief Williams fail to achieve diversity within the S.W.A.T. unit and that minorities suffer as a result. Even affording the plaintiff all due solicitude at this early stage, this claim is too speculative and conclusory to pass muster under the Monell standard. To the extent that plaintiff alleges that the Utica Police Department targets minority communities, that claim is sufficiently addressed in plaintiff's first cause of action. See supra Part 2.a; see also supra Part C. 2. Accordingly, it is recommended that plaintiff's fourth cause of action against the Utica Police Department and Chief Williams be dismissed without prejudice.

### 4. Claims Against Officers Cinque, Amerosa, and Paladino

### a. Sixth and Seventh Causes of Action[8]

Plaintiff alleges that lieutenant Donald Cinque was negligent in his supervision of the preparation and execution of the May 21, 2015 arrest warrant. Compl. at 10. Specifically, plaintiff alleges that defendant Cinque was negligent insofar as he authorized the shooting of the dog, King. Id. at 11.

For an individual to be held liable in damages under § 1983, a plaintiff must allege that the individual was "personally involved" in the constitutional violation. Ferrer v. Fischer, No.9:13-CV-0031 (NAM/ATB), 2014 WL 1763383, at *2 (N.D.N.Y. May 1,

---

[8] Plaintiff's sixth and seventh causes of action are redundant and will, therefore, be analyzed together. See Compl. at 10-11.

2014) (citing <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006)); <u>see</u> <u>also</u> <u>Wright v.</u>

<u>Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d

880, 886 (2d Cir. 1991)) ("It is well settled in this Circuit that 'personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'").

> A plaintiff may establish the personal involvement of a
> defendant-supervisor by showing that he "(1) directly
> participated in the violation, (2) failed to remedy the violation
> after being informed of it by report or appeal, (3) created a
> policy or custom under which the violation occurred, (4) was
> grossly negligent in supervising subordinates who committed
> the violation, or (5) was deliberately indifferent to the rights
> of others by failing to act on information that constitutional
> rights were being violated."

<u>Malay v. City of Syracuse</u>, 638 F. Supp.2d 303, 313 (N.D.N.Y. 2009) (citing <u>Iqbal v.</u>

<u>Hasty</u>, 490 F.3d 143, 152-53 (2d Cir. 2007) (citation omitted)).

     Reading the complaint to raise the strongest argument it suggests, plaintiff

appears to allege that defendant Cinque was negligent in his supervision of defendant

Amerosa, which ultimately led to Amerosa's shooting of the dog, King.  <u>See</u> Compl. at

7, 10-11.  However, plaintiff has failed to set forth any facts indicating that defendant

Cinque did, in fact, hold a position in which he was responsible for supervising

defendant Amerosa, or that defendant Cinque was involved with the search conducted

on May 21, 2015.  <u>See</u> <u>generally</u> Compl.  Moreover, plaintiff has offered no facts

demonstrating that defendant Cinque: (1) directly participated in the alleged unlawful

seizure of the dog; (2) failed to remedy any purported violation after being informed of

it; (3) created a policy or custom under which the alleged violation occurred; (4)

exhibited gross negligence in the supervision of subordinate officers; or (5) was deliberately indifferent to plaintiff's constitutional rights.  <u>Mayla</u>, 638 F. Supp.2d at 313 (citing <u>Iqbal</u>, 490 F.3d at 152-53); <u>see generally</u> Compl.  Indeed, the complaint is void of any factual allegations against defendant Cinque whatsoever, and mentions him only in the causes of action.  <u>See id.</u> at 10-11.  Thus, plaintiff has failed to allege sufficient facts demonstrating defendant Cinque's personal involvement for purposes of a § 1983 claim based on supervisory liability in support of his conclusory allegation that defendant Cinque "authorized" the shooting of the dog.  <u>See</u> <u>Mayla</u>, 638 F. Supp.2d at 313 (citing <u>Iqbal</u>, 490 F.3d at 152-53); <u>Ferrer</u>, 2014 WL 1763383, at *2.  Accordingly, it is recommended that plaintiff's claims against defendant Cinque be dismissed without prejudice, and that, should plaintiff wish to attempt to proceed against defendant Cinque under this cause of action, he be permitted to amend his complaint to allege sufficient facts demonstrating personal involvement based on the foregoing factors.

### b. Eighth and Ninth Causes of Action[9]

Plaintiff alleges that defendants Paladino and Amerosa violated the "cruel and unusual punishment clause, the search and seizure clause," and the "due process clause" because they exhibited "deliberate indifference, negligence and malevolent actions in killing our dog" and in "preparing and executing the raid."  Compl. at 11. Affording plaintiff's complaint the benefit of a liberal reading, the undersigned interprets

---

[9] Plaintiff's eight and ninth causes of action are redundant and will, therefore, be analyzed together as one claim.  <u>See</u> Compl. at 11.

the claims against defendants Amerosa and Paladino as a Fourth Amendment Claim for unreasonable seizure arising from the killing of the dog, King.  Id.

The Fourth Amendment guarantees citizens the right "to be secure in their . . . effects[] against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV. "Courts have consistently recognized that a law enforcement officer's killing of a pet dog constitutes a destruction of property and therefore a seizure under the Fourth Amendment."  Dziekan v. Gaynor, 376 F. Supp.2d 267, 270 (D. Conn. 2005) (citing San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005).  Where a law enforcement officer kills a pet dog, the killing will be considered an unreasonable seizure where the dog posed no imminent danger to the officer.  See, e.g., Brown v. Muhlenberg Township, 269 F.3d 205, 210-11 (3d Cir. 2001) (concluding that, where a dog was off its leash, but standing stationary in a parking lot, and the owner screamed for the police to refrain from shooting, it was unreasonable for the officer to shoot and kill the dog).

Here, plaintiff alleges that the dog, King, was "crying" and "agitated" as a result of defendant Paladino's repeated acts of forcing his feet into plaintiff's neck.  See Compl. at 7.  There is no mention in the complaint that King exhibited aggressive behavior toward the officers.  See generally id.  Rather, plaintiff alleges that defendant Amerosa "opene[ed] fire on our dog, firing at least six (6) shots, killing our dog" after King began "crying" in reaction to defendant Paladino pressing his feet into plaintiff's neck.[10]  Id.

---

[10] Although plaintiff refers to King as "our dog," it is also alleged that plaintiff was visiting his aunt's home in Utica, New York.  Dkt. No. 1 at 3, 7.  Therefore, it is not clear whether plaintiff owned the dog.

17

Accepting these facts as true, as the undersigned must at this early stage, plaintiff arguably states a cause of action against defendant Amerosa for unreasonable seizure of property in violation of the Fourth Amendment. Accordingly, it is recommended that plaintiff's Fourth Amendment seizure claim against defendant Amerosa proceed.

Plaintiff's Fourth Amendment seizure claim against defendant Paladino may not proceed in its current state, as plaintiff does not allege that Paladino was personally involved in the shooting and killing of the dog. "In order to hold an individual liable for damages in a section 1983 action, a plaintiff must allege that the individual was 'personally involved' in the constitutional violation of which he complains." Ferrer, 2014 WL 1763383, at *2 (citing Farell, 449 F.3d at 484); Wright, 21 F.3d at 501. Plaintiff alleges that defendant Amerosa alone fired the rounds that killed King. Compl. at 7. Moreover, plaintiff does not indicate that defendant Paladino responded to Amerosa's question regarding whether he should shoot the dog. Id. According to plaintiff's recitation of the incident, Paladino played no role in killing the dog; thus, plaintiff fails to allege Paladino's personal involvement. Accordingly, it is recommended that plaintiff's Fourth Amendment seizure claim against defendant Paladino be dismissed without prejudice.

### c. Tenth Cause of Action

Plaintiff alleges that defendants Paladino and Amerosa violated his constitutional rights by using excessive force against him during his May 21, 2015 arrest. Compl. at 12. Although plaintiff's complaint cites multiple constitutional provisions under which he

asserts this cause of action, his claim may most properly be brought as a Fourth Amendment excessive force claim, as plaintiff clearly alleges that defendants used force in excess of what was reasonably necessary to apprehend him. See Porath v. Bird, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 (N.D.N.Y. June 3, 2013) (holding that a claim for excessive force brought against a police officer for conduct that occurred prior to arraignment is governed by the Fourth Amendment); see also Sloane v. Kraus, No. 06-CV-5372 (RPP), 2010 WL 3489397, at *10 (S.D.N.Y. Sept. 3, 2010) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)) ("[B]ecause plaintiff alleges excessive force by a police officer prior to his arraignment, a Fourth Amendment excessive force analysis applies."); Compl. at 5, 10.

Plaintiff contends that he encountered defendants Paladino and Amerosa as he attempted to go upstairs after hearing the S.W.A.T. team enter his aunt's house. Compl. at 5. Defendant Paladino ordered plaintiff to get down onto the floor and place his hands behind his back. Id. Plaintiff "immediately complied" with this order. Id. Once plaintiff was on the ground, defendant Paladino "place[d] his feet on [plaintiff's] neck, pressing [plaintiff's] face to the ground" and stated "don't move or I'll blow your fucking head off." Id. at 6. At this point, the dog became agitated and began to cry. Id. Defendant Amerosa then asked defendant Paladino whether he should shoot the dog. Id. Plaintiff pleaded with defendant Amerosa not to shoot the dog, and defendant Paladino again pressed his feet into plaintiff's neck. Id. As discussed, defendant Amerosa then opened fire on the dog, killing it, and one of these bullets hit his right foot. Id. at 7.

19

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to the [officer's] underlying intent or motivation.'" Parmley, 465 F.3d at 61 (quoting Graham, 490 U.S. at 397). Specifically, courts will balance the following factors: "the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether [the subject was] actively resisting arrest or attempting to evade arrest by flight." Ferreira v. City of Binghamton, No. 3:13-CV-107, 2016 WL 4991600, at *3 (N.D.N.Y. Sept. 16, 2016) (quoting Soares v State of Conn., 8 F.3d 917, 921 (2d Cir. 1993) (citation omitted)).

Accepting plaintiff's allegations as true, the complaint states a plausible claim of excessive force against defendants Paladino and Amerosa. The apparent crime underlying the search and arrest was drug sales, the "severity" of which is unclear from the complaint. Ferreira, 2016 WL 4991600, at *3; see Compl. at 4. However, under the facts of plaintiff's complaint, he posed no immediate threat to the safety of the arresting officers or anyone else, as he "immediately" complied with defendant Paladino's instructions to get on the floor and place his hands behind his back. Ferreira, 2016 WL 4991600, at *3; Compl. at 6. Additionally, plaintiff neither resisted arrest nor attempted to flee, as he complied with defendant Paladino's command and situated himself on the

20

floor.  Ferreira, 2016 WL 4991600, at *3; Compl. at 6.  Thus, it is at least arguable that officer Paladino's act of "pressing" his feet into plaintiff's neck and defendant Amerosa's act of shooting plaintiff's foot were not "objectively reasonable."  Ferreira, 2016 WL 4991600, at *3.  Accordingly, it is recommended that plaintiff's excessive force claims against defendants Paladino and Amerosa proceed.

### 5. Punitive Damages

To the extent that plaintiff's complaint may be construed to allege claims against the proper municipal defendant – the City of Utica – it is recommended that any claims seeking punitive damages be dismissed because "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  Toliver v. New York City Dep't. of Corr., No. 10-CV-5355 (RJS/JCF), 2013 WL 3779125, at *7 n.6 (S.D.N.Y. July 8, 2013) (quoting Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)).

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that the following claims be **DISMISSED with prejudice and without opportunity to amend**:

(1) plaintiff's third cause of action against defendant Williams in his individual capacity and the Utica Police Department for allowing arrest warrants to be conducted in the residence of a third party; and

(2) plaintiff's fourth cause of action against defendant Williams in his

21

individual capacity and the Utica Police Department for failing to hire a diverse S.W.A.T. team; and it is further

**RECOMMENDED**, that the following claims be **DISMISSED with prejudice** against the Utica Police Department, **but without prejudice to affording plaintiff an opportunity to amend his complaint to attempt set forth these claims against the proper municipal defendant**:

(1) plaintiff's first cause of action against the Utica Police Department for the for exercising a discriminatory policy of targeting minority homes;

(2) plaintiff's second cause of action against the Utica Police Department for failing to instate a practice or policy regarding the ethical treatment of animals while conducting arrest warrants; and

(3) plaintiff's fifth cause of action against the Utica Police Department for the failure to properly train officers in exercising reasonable care when confronting animals; and it is further

**RECOMMENDED**, that all claims against the defendant officers in their official capacities be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that the following claims be **DISMISSED without prejudice and with opportunity to amend** as set forth within this Report-Recommendation and Order:

(1) plaintiff's sixth and seventh causes of action against defendant Cinque for negligent supervision of defendants Amerosa and Paladino; and

22

(2) plaintiff's eighth and ninth causes of action against defendant Paladino

for unlawful seizure arising from the killing of the dog; and it is further

**RECOMMENDED**, that the following claims against defendant Williams in his

individual capacity **PROCEED**:

(1) plaintiff's first cause of action for exercising a discriminatory policy of

targeting minority homes;

(2) plaintiff's second cause of action for failing to instate a practice or

policy regarding the ethical treatment of animals while conducting arrest

warrants; and

(3) plaintiff's fifth cause of action for the failure to properly train officers in

exercising reasonable care when confronting pets; and it is further

**RECOMMENDED**, that the plaintiff's eighth and ninth causes of action against

defendant Amerosa for unlawful seizure arising from the killing of the dog, King,

**PROCEED**; and it is further

**RECOMMENDED**, that plaintiff's tenth cause of action against defendants

Amerosa and Paladino based on excessive force **PROCEED**; and it is further

**RECOMMENDED**, that plaintiff's claims, insofar as they may be read as seeking

punitive damages against the City of Utica, be **DISMISSED with prejudice and**

**without opportunity to amend**, and it is further

**RECOMMENDED**, that plaintiff's claims brought under the New York State

Constitution be **DISMISSED with prejudice**, for the reasons set forth within this

Report-Recommendation and Order; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted in full, plaintiff be permitted **THIRTY (30)** days from the date of that Order adopting this Report-Recommendation and Order to file his amended complaint should he wish to proceed on the claims that are dismissed without prejudice; and it is further

**RECOMMENDED**, that if this Report-Recommendation and Order is adopted in full, the District Judge issue summonses and General Order 25, to the United States Marshal for service upon the defendants; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED**.

Dated: November 16, 2016
   Albany, New York

Christian F. Hummel
U.S. Magistrate Judge