UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ERIC J. JACKSON,

                      Plaintiff,

   -against-                                      8:16-CV-1137 (LEK/CFH)

MARK WILLIAMS, *et al.*,

                      Defendants.

**DECISION AND ORDER**

      This matter comes before the Court following an Order and Report-Recommendation filed on November 16, 2016, by the Honorable Christian F. Hummel, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 8 ("Report-Recommendation").

      Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge . . . may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

No objections were filed in the allotted time period. Docket. Accordingly, the Court has reviewed the Report-Recommendation for clear error. The Report-Recommendation misstates several aspects of municipal-liability doctrine, and it recommends that the Court let in three claims that must be dismissed, albeit with leave to amend.

First, the Report-Recommendation suggests that "for purposes of Monell claims, a police chief is considered to hold a position of final policymaking authority." Rep.-Rec. at 9. That is not quite right. The case the Report-Recommendation cites for this proposition illustrates the confusion underlying it. In Birmingham v. Ogden, 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999), the court said it was "indisputable" that the police chief in that case qualified as a policymaker. But the court clarified that the mere "fact that a particular official—*even a policymaking official*—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 374 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). "[T]he decisionmaker must [also] be responsible for establishing *final government policy* respecting the particular activity before the municipality can be liable." Id. Moreover, "the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008). And "[w]hether . . . a single individual possesses final policymaking authority is an issue of state law." Baity v. Kralik, 51 F. Supp. 3d

414, 436–37 (S.D.N.Y. 2014) (quoting Chin v. N.Y.C. Hous. Auth., 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008)).

Given these principles, it is not surprising that some courts have found that certain police chiefs were not final policymakers with respect to particular issues. See, e.g., Rissetto v. County of Clinton, No. 15-CV-720, 2016 WL 4530473, at *27 (N.D.N.Y. Aug. 29, 2016) (dismissing a claim against the town sheriff because the complaint failed to allege facts suggesting that he "acted as a policymaker for the [relevant] purposes"); Hardy v. Town of Greenwich, No. 06-CV-833, 2009 WL 2176117, at *4 (D. Conn. July 22, 2009) ("[W]hile [the Police Chief] . . . had broad discretion over appointment of particular officers to specialized units, he did not exercise final policymaking authority in this area [because] local law clearly establishes the First Selectman, who is also the lone Police Commissioner, as the final policymaker for the Town of Greenwich with regard to employment policy within the Police Department."); Russo v. City of Hartford, 341 F. Supp. 2d 85, 108 (D. Conn. 2004) (holding that while the police chief did "exercise discretionary authority" in several respects, his "exercise of this discretion [did] not necessarily compel the conclusion that [he] was a policymaker the purpose of establishing municipal liability" because it was "uncontroverted that the City Charter vest[ed] policymaking authority in the City Council and the City Manager"); Birmingham, 70 F. Supp. 2d at 374 (dismissing Monell claim because, while it was clear that the police chief and mayor were policymakers, "neither party . . . ha[d] . . . presented the court with law or evidence regarding the policymaking authority . . . of the Board of Police Commissioners with respect to final personnel actions"). It is therefore incorrect to say that police chiefs necessarily are final policymakers.

3

Second, the Report-Recommendation provides a misleading description of the pleading standard for Monell claims. The Report-Recommendation states that a Monell claim should not be dismissed so long as the defendant has "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Rep.-Rec. at 9 (quoting Hines v. City of Albany, 542 F. Supp. 2d 218, 230 (N.D.N.Y. 2008)). The Report-Recommendation goes on to discuss the implications of this standard in a way that suggests a "reli[ance] on the more lenient notice pleading standard first articulated in Conley v. Gibson, 355 U.S. 41 (1957)." Mohawk v. William Floyd Sch. Dist., No. 13-CV-2518, 2014 WL 7185946, at *2 (E.D.N.Y. Dec. 15, 2014). The problem is that "Conley no longer states the applicable law: The modern 'plausibility' standard has governed motions to dismiss pleadings in federal court since 2007." Citizens United v. Schneiderman, No. 14-CV-3703, 2016 WL 4521627, at *2 (S.D.N.Y. Aug. 29, 2016) (citing Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 253 (2d Cir. 2014))). Thus, it is no longer true that boilerplate allegations about, say, a municipality's policy of failing to adequately supervise its employees are enough to state a claim for relief. See, e.g., Harris v. Nassau County, No. 13-CV-4728, 2016 WL 3023265, at *11 (E.D.N.Y. May 24, 2016) ("Plaintiff's Monell pleadings are insufficient to survive a motion to dismiss. Indeed, Plaintiff's claims are supported by nothing more than conclusory, boilerplate statements. Plaintiff has not specifically identified an official policy or explained how that policy caused him to suffer the denial of a constitutional right."); Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015) ("[T]o survive a motion to dismiss, Plaintiffs cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such

a municipal policy or custom exists.'" (quoting Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012))); Betts v. Shearman, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) ("'[B]oilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the litigation."), aff'd, 751 F.3d 78 (2d Cir. 2014); Plair v. City of New York, 789 F. Supp. 2d 459, 468–69 (S.D.N.Y. 2011) (holding that, in light of Twombly and Iqbal, "boilerplate Monell claims do not rise to the level of plausibility" sufficient to survive a motion to dismiss").[1]

Third, the Report-Recommendation incorrectly suggests that the Court could allow Monell claims to proceed against defendant Chief Mark Williams in his individual capacity. Rep.-Rec. at 10–12. The problem is that "Monell does not apply to state officials or to individuals who are sued in their individual capacity." Amory v. Katz, No. 15-CV-1535, 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016). That is because "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." Kentucky v. Graham, 473 U.S. 159, 167–68 (1985).

Fourth, the Court cannot accept Judge Hummel's recommendation that it let in plaintiff Eric J. Jackson's claim against Williams to the extent that he alleges Williams "exercis[ed] a discriminatory practice or policy of targeting minority homes . . . for drug raids." Dkt. No. 1 ("Complaint") at 9; Rep.-Rec. at 10. Nor can it accept Judge Hummel's recommendation that it let in Jackson's claims against Williams for "failing to have a policy or practice . . . that allows

---

[1] It is true that a court should not subject Monell claims to a heightened pleading standard. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). But Monell claims still must satisfy the plausibility standard set out in Twombly and Iqbal. E.g., Kucharczyk, 95 F. Supp. 3d at 540.

5

for the ethical treatment of animals" during raids, Compl. at 9; Rep.-Rec. at 11, and for failing to implement a policy of training officers in how to exercise proper care in dealing with animals during raids, Compl. at 10; Rep.-Rec. at 11. Judge Hummel appears to have based these conclusions on his erroneous understanding of the pleading standard for Monell claims, which in any case is inapplicable to claims against Williams in his individual capacity. These claims are more properly understood as asserting supervisory liability against Williams.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Personal involvement can be shown by alleging

> (1) that the defendant actually and directly participated in the alleged unconstitutional acts; (2) that the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) that the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) that the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; or (5) that the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.

Garcia v. Univ. of Conn. Health Care Ctr., No. 16-CV-852, 2016 WL 5844463, at *3 (D. Conn. Sept. 29, 2016) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Further, a plaintiff must "demonstrate a causal link between the actions of the supervisory official and his injuries." Conley v. Rivera, No. 16-CV-2083, 2017 WL 277912, at *3 (D. Conn. Jan. 20, 2017) (citing Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)).

Jackson alleges merely that Williams created a policy of disproportionately targeting minority-owned homes in drug raids. Compl. at 9. But "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." Koehl v. Bernstein, No. 10-CV-3808, 2011 WL 2436817, at *19 (S.D.N.Y. June 17, 2011), adopted by, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011). For example, in Guzman v. City of New York, No. 10-CV-1048, 2011 WL 2652572, at *4 (S.D.N.Y. July 7, 2011), the court held that the plaintiff's complaint failed to state a claim because it "allege[d merely] that [the New York City Police Commissioner] promoted police officers' infringement of the constitutional rights of racial minorities and the poor by refusing to pursue investigations or sanction subordinates." Similarly, in Nielsen v. City of Rochester, 58 F. Supp. 3d 268, 275 (W.D.N.Y. 2014), the court noted that the plaintiff's complaint alleged that the police chief had enacted a policy of, among other things, "expos[ing] subjects of arrest to excessive force." The court held that this allegation failed to state a claim for relief, because it was "conclusory, and [the complaint] merely recited the legal standard required for imposing supervisory liability, without providing any supporting factual allegations." Id. Other courts have reached the same conclusion on similar fact patterns. See, e.g., Morgan v. Ward, No. 14-CV-7921, 2016 WL 427913, at *7 (S.D.N.Y. Feb. 2, 2016) ("The plaintiff's allegations against [the individual defendant] are nothing more than bare assertions, conclusions and formulaic recitations of the elements of supervisory liability, and are devoid of non-conclusory factual allegations describing how [the defendant] was involved in the alleged constitutional violations."); Jones v. Roosevelt Island Operating Corp., No. 13-CV-2226, 2013 WL 6504428, at *4 (S.D.N.Y. Dec. 11, 2013) ("[W]hile there are general allegations of a policy or custom in

7

which unconstitutional practices occurred, plaintiff offers no concrete evidence or even a suggestion of such evidence in the Complaint. Merely stating legal conclusions is insufficient to state a cognizable claim for relief."). Thus, Jackson's allegation about this policy does not state a plausible claim for relief.

Jackson's allegation about Williams's failure to train officers in the ethical treatment of animals is equally deficient. As in the context of supervisory liability based on the enactment of a policy or custom, supervisory liability premised on grossly negligent supervision cannot rest on mere boilerplate allegations. See, e.g., Hill v. Chapdelaine, No. 16-CV-1656, 2017 WL 62511, at *4 (D. Conn. Jan. 5, 2017) ("The plaintiff's conclusory allegation that [the] Warden . . . failed to properly train correctional staff . . . does not state a plausible claim for supervisory liability."); Wright v. Orleans County, No. 14-CV-622, 2015 WL 5316410, at *15 (W.D.N.Y. Sept. 10, 2015) (holding that it was insufficient for purposes of supervisory liability to allege that the sheriff, among others, was grossly negligent in training officers in relevant Fourth and Fourteenth Amendment principles); Landron v. City of New York, No. 14-CV-1046, 2014 WL 6433313, at *5 (S.D.N.Y. Nov. 7, 2014) (holding that supervisory liability would not lie where the plaintiff alleged merely that the warden "grossly failed to train and properly supervise his corrections officers"); Houston v. Nassau County, No. 08-CV-882, 2012 WL 729352, at *5 (E.D.N.Y. Mar. 7, 2012) (holding that the plaintiff did not state a claim for supervisory liability by alleging only that the sheriff "was grossly negligent in managing his subordinates by not placing properly trained officers and supervisors at [the prison]"). Thus, Jackson's conclusory allegation about the lack of training for which Williams was allegedly responsible is insufficient to state a claim for supervisory liability.

A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). Leave to amend should typically be withheld only if amendment would be futile—that is, if it is clear from the facts alleged that the events in question cannot give rise to liability. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). It is not clear that amendment would be futile here, so Jackson may attempt to replead these allegations with the specificity and level of detail required by the case law discussed above.

The Court has reviewed the remainder of the Report-Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 8) is **ADOPTED in part and REJECTED in part**; and it is further

**ORDERED**, that Jackson's third cause of action against Williams in his individual capacity and the Utica Police Department for allowing arrest warrants to be conducted in the residence of a third party is **DISMISSED without leave to amend**; and it is further

**ORDERED**, that the following claims are **DISMISSED without leave to amend** as to the Utica Police Department, but **without prejudice** to giving Jackson an opportunity to amend his Complaint (Dkt. No. 1) to set forth these claims against the proper municipal defendant: (1) Jackson's first cause of action against the Utica Police Department for maintaining a discriminatory policy of targeting minority homes (2) Jackson's second cause of action against the Utica Police Department for failing to enact a policy regarding the ethical treatment of

9

animals during the carrying out of arrest warrants; (3) Jackson's fourth cause of action against the Utica Police Department for failing to hire a diverse SWAT team; and (4) Jackson's fifth cause of action against the Utica Police Department for failing to properly train officers to exercise reasonable care in confronting animals; and it is further

**ORDERED**, that all claims against the defendant officers in their official capacities are **DISMISSED without leave to amend**; and it is further

**ORDERED**, that the following claims are **DISMISSED with leave to amend**: (1) Jackson's sixth and seventh causes of action against Cinque for negligent supervision of Amerosa and Paladino, and (2) Jackson's eighth and ninth causes of action against Paladino for unlawful seizure arising from the killing of the dog; and it is further

**ORDERED**, that the following claims against Williams in his individual capacity are **DISMISSED with leave to amend**: (1) Jackson's first cause of action for maintaining a discriminatory policy of targeting minority homes, (2) Jackson's second cause of action for failing to enact a policy regarding the ethical treatment of animals during the carrying out of arrest warrants, (3) Jackson's fourth cause of action for failing to hire a diverse SWAT team, and (4) Jackson's fifth cause of action for failing to properly train officers to exercise reasonable care in confronting animals; and it is further

**ORDERED**, that Jackson's tenth cause of action against Amerosa and Paladino based on excessive force, and Jackson's eighth and ninth causes of action against Amerosa for unlawful seizure arising from the killing of the dog, shall proceed; and it is further

**ORDERED**, that Jackson's claims under the New York State Constitution are **DISMISSED without leave to amend**; and it is further

**ORDERED**, that Jackson may amend his complaint within **thirty (30) days** of this Decision and Order in order to cure the deficiencies identified in the claims dismissed with leave to amend; and it is further

**ORDERED**, that the Clerk of the Court issue summonses and forward them, along with copies of the Complaint (Dkt. No. 1) and General Order 25, to the United States Marshal for service upon Paladino and Amerosa; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on Jackson in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 28, 2017
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge