UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ERIC JACKSON,

                            Plaintiff,

   -against-                                     8:16-CV-1137 (LEK/CFH)

MARK WILLIAMS, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Eric Jackson brought this action under 42 U.S.C. § 1983 and New York State law against several employees of the Utica Police Department: Chief of Police Mark Williams, Officer Donald Cinque, Officer Joseph Amerosa, and Officer Paul Paladino. Dkt. No. 1 ("Complaint"). Plaintiff's claims arise out of an incident involving the execution of a search warrant on May 21, 2015 at the home of Plaintiff's aunt (where Plaintiff was staying at the time). Id. The only defendants remaining in the case, Amerosa and Paladino (collectively, "Defendants"), have moved for summary judgment on the two claims that remain in this action: (1) Fourth Amendment claim against Amerosa for unlawfully seizing a dog, King, when Amerosa killed King during the May 21, 2015 police raid; and (2) Fourth Amendment claims against Defendants for using excessive force on Plaintiff during the raid. Dkt. Nos. 52 ("Motion for Summary Judgment"); 52-18 ("Defendants' Statement of Material Facts"); 52-19 ("Defendants' Memorandum"); 56 ("Defendants' Reply"). Plaintiff has failed to oppose the Motion for Summary Judgment. Docket.

For the reasons that follow, Defendants' Motion for Summary Judgment is granted and Plaintiff's attorney, Michael P. Kushner, is ordered to show cause why he did not notify the Court and Defendants of Plaintiff's intention to not oppose Defendants' Motion for Summary Judgment.

## II. BACKGROUND

The facts and allegations in this case were detailed in an Order and Report-Recommendation filed on November 16, 2016 by the Honorable Christian F. Hummel, United States Magistrate Judge, familiarity with which is assumed. Dkt. No. 8 ("Report-Recommendation" and "Order"). Below the Court describes the facts relevant to the instant motion.

On May 21, 2015, several officers of the Utica Police Department executed a no-knock search warrant at the home of Plaintiff's aunt as part of a drug investigation. Mot. for Summ. J., Ex. 13 ("Incident Report") at 20. Prior to entering the home, the officers knew they might encounter a pit-bull named, King. Incident Report at 14. King was known by one resident of the home, Nathaniel Jackson, to be "a guard dog" and so used by his guardians to "bite," "attack," and "protect." Mot. for Summ. J., Ex. 3 ("Nathaniel Jackson 2019 Deposition") at 39; see also Mot. for Summ. J., Ex. 6 ("Amerosa Deposition") at 1 (noting King "was known to have bitten people in the past"). Upon entering the house, the officers found King, Plaintiff, and Nathaniel Jackson. Incident Report at 21–22. Paladino noted that King was "a large and aggressive canine." Mot. for Summ. J., Ex. 4 ("Paladino Deposition") at 1. King also "snapped its teeth" at Paladino, id. at 2, and "growl[ed]" at Amerosa, Mot. for Summ. J., Ex. 5 ("Nathaniel Jackson 2015 Deposition") at 1. As the raid proceeded, the officers commanded Plaintiff to lay face down on

the floor of the home, and Plaintiff obeyed. Amerosa Dep. at 1. Once Plaintiff was lying on the ground, Paladino pressed his feet into Plaintiff's neck and stated, "Don't move or I'll blow your f***ing head off." Compl. at 6.[1] At this point King became agitated and began to cry. Id. The dog then positioned himself on top of Plaintiff. Amerosa Dep. at 1. Amerosa attempted to stop King from further interfering with the officers' efforts to secure Plaintiff by "back[ing] [the dog] up against a wall." Id. However, this caused Amerosa to "fe[el] threatened" since King had "no where [sic] to go." Id. Amerosa asked Paladino whether he should shoot the dog. Compl. at 6. King then "leap[t] in the air" at Amerosa, which prompted Amerosa to shoot and kill the dog. Nathaniel Jackson 2015 Dep. at 1. One of Amerosa's bullets passed through one of King's legs and ricocheted off the floor into Plaintiff's foot. Mot. for Summ. J., Ex. 11 ("Krivosta Expert Report") at 11.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a

---

[1] "A verified complaint," like the Complaint in this case, "is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist . . . ." See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 256 (2d Cir. 2013) (noting summary judgment is appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)). If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." Anderson, 477 U.S. at 250; see also Celotex, 477 U.S. at 323–24.

As noted by another court in this district:

> What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that the fact that there has been no such response does not by itself mean that the motion is to be granted automatically. Rather, practically speaking, the Court must (1) determine what material facts, if any, are disputed in the record presented on the defendants' motion, and (2) assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the defendants. However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the burden on the motion to one that is merely modest.
>
> More specifically, where a plaintiff has failed to properly respond to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have consented to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court. Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are facially meritorious.

4

> Finally, implied in the above-stated burden-shifting standard is the fact that, where a nonmovant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.

White v. Verizon Commc'ns, Inc., No. 06-CV-1536, 2008 WL 5382329, at *3 (N.D.N.Y. Dec. 17, 2008) (citations, internal quotation marks, and alterations omitted).

**IV.    DISCUSSION**

The Court has reviewed Defendants' Statement of Material Facts and finds those facts supported by the evidence in the record. The Court has also reviewed Defendants' Memorandum and concludes the legal arguments included within are facially meritorious. Therefore, as elaborated below, the Court grants summary judgment in favor of Defendants.

**A.  Claims Under 42 U.S.C. § 1983**

"42 U.S.C. § 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of the right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." Id.

   *1. Unlawful Seizure of King*

Amerosa argues that it was not unreasonable for the purposes of the Fourth Amendment for him to kill King. Defs.' Mem. at 3–8. The Court agrees.

The Fourth Amendment provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. For Plaintiff to succeed on his claim, he "bears the burden of proving that [the] seizure—the killing of a companion animal—was unreasonable under the circumstances." Sanders v. City of Rochester, New York, 360 F. Supp. 3d 152, 166 (W.D.N.Y. 2019) (citing Carroll v. Cty. of Monroe, 712 F.3d 649, 651 (2d Cir. 2013)). As another court in this circuit has observed:

> The Fourth Amendment's reasonableness inquiry requires a balancing of the nature and quality of the intrusion on the plaintiff's Fourth Amendment rights against the countervailing government interest at stake. [Graham v. Connor, 490 U.S. 386, 396 (1989)]. As Graham elaborates, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 395 [].
>
> The government retains a strong interest in allowing law enforcement officers to protect themselves and the citizenry from animal attacks. [Altman v. City of High Point, N.C., 330 F.3d 194, 205 (4th Cir. 2003)]. Thus, courts have generally held that no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat. See Altman, 330 F.3d at 206 (officers reasonably shot and killed dogs that posed danger, including Rottweiler known to have previously attacked individuals in neighborhood, aggressive pack of dogs that attacked an officer, and Pitbull mix that displayed aggressive behavior toward a meter reader); [Hatch v. Grosinger, No. 01-CV-1906, 2003 WL 1610778, at *5 (D. Minn. Mar. 3, 2003)] (no unreasonable seizure where dog had exhibited threatening behavior). Similarly, in Warboys v. Officer Proulx, this Court held that "[a]n officer who encounters a 90– to 100–pound pit bull dog—a dog which is demonstrably not able to be restrained by its owner or guardian and which is approaching the officer at a rate of 6 feet per second and is at a distance of no more than ten feet—does not act

6

unreasonably in shooting the dog to protect himself and his canine companion." 303 F. Supp. 2d 111, 118 (D. Conn. 2004).

Dziekan v. Gaynor, 376 F. Supp. 2d 267, 270–71 (D. Conn. 2005).

As an initial matter, the Court recognizes the importance of properly training police officers on how to handle canines that they encounter while on duty. See National Sheriffs' Association, Law Enforcement Dog Encounters Training (LEDET), https://www.sheriffs.org/ledet. However, regardless of the training Amerosa may have received from the Utica Police Department,[2] there is no genuine dispute over whether Amerosa's killing of King "was reasonable in light of the imminent danger posed by the canine." See id. at 271. King "growl[ed]" at Amerosa at the start of the raid. Nathaniel Jackson 2015 Dep. at 1. As the raid continued, Amerosa attempted to stop King from further interfering with the officers' efforts to secure Plaintiff by "back[ing] [the dog] up against a wall." However, this caused Amerosa to "fe[el] threatened" since King had "no where [sic] to go." Amerosa Dep. at 1. King then "leap[t] in the air" at Amerosa, which prompted Amerosa to shoot and kill the dog. Nathaniel Jackson 2015 Dep. at 1. In sum, Amerosa acted reasonably when he killed King since Amerosa was compelled with no time to spare to prevent an animal from attacking him. See Cabisca v. City of Rochester, No. 14-CV-6485, 2019 WL 5691897, at *11 (W.D.N.Y. Nov. 4, 2019) ("[I]t was reasonable for Officer Wengert to believe that a large unrestrained dog, barking and quickly approaching him at night by ascending stairs leading onto a small porch that provided no way to retreat safely, presented a threat to his safety. Accordingly, it was unfortunate, but not

---

[2] Plaintiff did initially plead Williams and the Utica Police Department improperly trained Amerosa and other officers on how to handle dogs they encounter while on the job. See Compl. at 9–10. The Court, however, dismissed those claims without prejudice, Dkt. No. 11 ("2017 Decision and Order") at 9–10, and Plaintiff never repled the claims.

unreasonable for Wengert to draw his weapon and shoot Bailey." (internal citation omitted.)); Bailey v. Schmidt, 239 F. App'x 306, 308 (8th Cir. 2007) (affirming summary judgment on a plaintiff's claim for unlawful seizure of his pet when there was "uncontested evidence that all of the dogs either advanced on or acted aggressively toward the officers"); Esterson v. Broward Cty. Sheriff's Dep't, No. 09-CV-60280, 2010 WL 4614725, at *4 (S.D. Fla. Nov. 4, 2010) (shooting of dog not unreasonable where dog "charged" at officer and officer "was unable to retreat"); Hatch , 2003 WL 1610778, at *5 ("Here, the undisputed facts indicate that the dog, without restraint or owners in sight, made an aggressive charge . . . . While one could question Deputy Grosinger's choice to use the maximum level of force several seconds after [the dog] appeared, 'the Fourth Amendment does not allow this type of 'Monday morning quarterback' approach because it only requires that the seizure fall within a range of objective reasonableness.'"). Because Amerosa acted reasonably, Plaintiff's claim against Amerosa for unlawfully seizing King is dismissed.[3]

## 2. Excessive Force Against Plaintiff

Plaintiff claims that Defendants utilized excessive force against him when Paladino placed his feet on Plaintiff's neck and when Amerosa shot Plaintiff in the process of repelling King. Compl. at 6–7.

As an initial matter, Defendants argue that they did not violate Plaintiff's substantive due process rights under the Fourteenth Amendment and do not address whether their actions against Plaintiff violated his Fourth Amendment rights. Defs.' Mem. at 8–13. The Court reminds

---

[3] The Court need not reach Amerosa's alternative arguments for dismissal, namely that Plaintiff does not possess standing under the Fourth Amendment to pursue his claim or that Amerosa is entitled to qualified immunity. Defs.' Mem. at 2–3, 14–19.

Defendants that the Court has construed Plaintiff's excessive force claim as one "most properly [] brought [under the] Fourth Amendment." Jackson, 2016 WL 11265990, at *8; see also Corbitt v. Vickers, 929 F.3d 1304, 1314 n.11 (11th Cir. 2019) (citing Graham, 490 U.S. at 388) (concluding that the Fourth Amendment, not the Fourteenth Amendment, applied to a claim of excessive force in which police officer accidentally shot the plaintiff instead of a dog since the plaintiff "was already seized—thus implicating the Fourth Amendment—when [the officer] shot at the dog"). Therefore, Defendants briefed the wrong claims. Nevertheless, the Court finds there is no genuine dispute over whether Defendants used excessive force on Plaintiff.

The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham, 490 U.S. at 395 (1989) (emphasis in original). An excessive force claim "is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d. Cir. 2000) (citing Graham, 490 U.S. at 395–396). Furthermore, "the forced used by the law enforcement officer must generally be more than de minimis for a claim to be actionable. De minimis injury can serve as conclusive evidence that de minimis force was used." Humbach v. Canon, No. 13-CV-2512, 2019 WL 1369464, at *7 (S.D.N.Y. Mar. 25, 2019) (citations omitted). "Accordingly, 'numerous courts have held that where plaintiff's injuries are de minimis, the claim of excessive force cannot rise to the level of a constitutional violation as a matter of law.'" Morales v. City of New

York, No. 13-CV-7667, 2016 WL 4718189, at *4 (S.D.N.Y. Sept. 7, 2016) (quoting Cunningham v. New York City, No. 04-CV-10232, 2007 WL 2743580, at *6 (S.D.N.Y. Sept. 18, 2007) (collecting cases)).

Plaintiff provides no evidence regarding any injuries he may have received when Paladino placed his feet on Plaintiff's neck. Consequently, the Court finds that Plaintiff only suffered de minimis injury, "defeating his claim as a matter of law." Scott v. City of New York, No. 16-CV-834, 2020 WL 208915, at *8 (E.D.N.Y. Jan. 14, 2020) (citing Greene v. City of New York, No. 15-CV-6436, 2019 WL 3606739, at *12–13 (E.D.N.Y. Aug. 6, 2019); Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)) (granting summary judgment on the plaintiff's excessive force claim since the plaintiff only suffered de minimis injury when an officer threw the plaintiff to the floor, handcuffed the plaintiff, placed his foot on the plaintiff's neck, and then pointed a taser at the plaintiff while saying, "[Y]ou see this right here motherfucker? This is for you."). Accordingly, the Court dismisses Plaintiff's excessive force claim against Paladino.

Moreover, the Court finds Amerosa is entitled to qualified immunity on Plaintiff's claim stemming from Plaintiff's bullet wound to the foot. As the Second Circuit has observed:

> Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Controlling authority serves to put officials on notice of what is unlawful; however, existing precedent must have placed the statutory or constitutional question beyond debate.

Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017) (internal citations, quotation marks, and alteration omitted).

The qualified immunity inquiry proceeds in two parts: first, whether a statutory or constitutional right was violated when the evidence is "viewed in the light most favorable to the plaintiff," and, second, whether that statutory or constitutional right "was clearly established at the time of the alleged violation." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).[4] A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mollica v. Volker, 229 F.3d 366, 370 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Second Circuit has found three factors relevant to this inquiry: (1) the right in question should be defined with "reasonable specificity," (2) Supreme Court and Second Circuit decisions support the existence of the right in question, and (3) a reasonable defendant would understand that their conduct is unlawful under existing law. Id. at 371 (quoting Shechter v. Comptroller of the City of New York, 79 F.3d 265, 271 (2d Cir. 1996)).

Here, the question is whether the Fourth Amendment is violated when an officer shoots at a target and accidentally hits another person. Second Circuit and Supreme Court precedent suggest there is no such violation. See Medeiros v. O'Connell, 150 F.3d 164, 167–69 (finding no Fourth Amendment violation when an officer's bullet accidentally hit the hostage instead of the hostage's captor); see also Dodd v. City of Norwich, 827 F.2d 1, 7 (2d Cir. 1987) ("It makes little sense to apply a standard of reasonableness to an accident."); Brower v. Cty. of Inyo, 489 U.S. 593, 596 (1989) ("[T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." (internal citation and quotation marks

---

[4] District courts have discretion to consider either element of the qualified immunity claim first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

omitted)). Hence, since there was no right clearly established at the time of the alleged use of excessive force against Plaintiff, Amerosa is entitled to qualified immunity. And because Amerosa is entitled to qualified immunity, the Court must dismiss Plaintiff's claim against him for excessive force.

### B. Plaintiff's Failure to Respond to the Motion for Summary Judgment

As noted above, Plaintiff failed to respond to Defendants' Motion for Summary Judgment.

According to Local Rule 7.1(b)(3):

> Any party who does not intend to oppose a motion, or a movant who does not intend to pursue a motion, shall promptly notify the Court and the other parties of such intention. They should provide such notice at the earliest practicable date, but in any event no less than **FOURTEEN DAYS** prior to the scheduled return date of the motion, except for good cause shown. **Failure to comply with this Rule may result in the Court imposing sanctions, and may be deemed sufficient cause for the denial of a motion or the granting of a motion by default.**

L.R. 7.1(b)(3) (emphasis in original).

On June 27, 2019, Defendants filed their Motion for Summary Judgment. Docket. The Docket clearly indicates that a response was due on July 16, 2019. Id. Yet Plaintiff neither responded to the Motion for Summary Judgment nor notified the Court or Defendants of his intention to not oppose it. Thus, Plaintiff's attorney, Michael P. Kushner, is ordered to show cause on "why he has not violated Local Rule 7.1(b)(3) and why he should not be sanctioned for

a violation thereof." See Shorette v. Harrington, No. 04-CV-538, 2005 WL 8171293, at *4 (N.D.N.Y. Nov. 16, 2005), aff'd, 234 F. App'x 3 (2d Cir. 2007).[5]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 52) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's attorney, Michael P. Kushner, show cause in writing within **twenty days** of the date of this Memorandum-Decision and Order as to why he has not violated Local Rule 7.1(b)(3) and should not be sanctioned for any violation of that Rule; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    February 26, 2020
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[5] The Court acknowledges this is not the first instance in which Plaintiff may have been potentially harmed by his attorney's actions. On January 26, 2018, Magistrate Judge Hummel ordered that Plaintiff's amended complaint be stricken from the docket because counsel had missed the deadline to file an amended complaint by over four months. Dkt. No. 25.